Hillsborough
No. 82-169

INDIAN HEAD NATIONAL BANK OF NASHUA

v.

ELSIE B. BROWN *& a.*

January 26, 1983

88

*Sullivan, Gregg & Horton P.A.*, of Nashua (*James L. Sullivan, Jr.*, on the brief and orally), for the plaintiff.

*Brown & Nixon P.A.*, of Manchester (*Robert G. Whitman* on the brief and orally), for the defendant Phyllis French.

*Gottesman & Hollis P.A.*, of Nashua (*David M. Gottesman* on the brief and orally), for the defendant Elsie B. Brown.

DOUGLAS, J. This is an appeal from a decision of the Superior Court (*Dalianis*, J.) in favor of the plaintiff trustee's interpretation of how the income from a residuary trust should be distributed. We affirm.

On August 14, 1969, the deceased settlor, Raymond Dexter Brown, established a revocable *inter vivos* trust. During the settlor's life, he was to receive the income from the trust. After his death, the trust agreement named his wife of twenty-five years, Elsie Brown, the sole beneficiary of the marital portion of the trust (marital trust), and Elsie and his two children by a prior marriage, Phyllis French and Gardner Brown, as beneficiaries of the residuary portion of the trust (residuary trust). On the same date, the decedent duly executed a will by which a substantial portion of his estate assets would "pour over" into the *inter vivos* trust.

Article Second of the trust directs the trustees, upon the settlor's death, to pay the income from the marital trust to Elsie at least quarterly during her lifetime. Article Second also provides, in relevant part:

> "The Trustees shall also pay to the Settlor's said wife from time to time such amounts of the principal of said [marital trust] property as will make *payments of money under this Trust Agreement* to her or for her benefit aggregate thirty-five thousand ($35,000) [dollars] annually . . . ."

(Emphasis added.) Article Third, which established the residuary trust, provides that the income from the residue of the trust property should be distributed initially as follows:

> "During the life of the Settlor's wife, Elsie B. Brown, to pay to her or for her benefit so much of the net income thereof as may be necessary to make the aggregate of *income payments to her from all sources, including that under Article Second hereof,* Thirty-five Thousand ($35,000) Dollars annually."

(Emphasis added.) If there is a balance of income from the residuary trust remaining after the payment to Elsie, Phyllis French and Gardner Brown, the settlor's children by his first marriage, are to receive up to $5,000 each. Any excess residuary trust income after the foregoing payments is to be divided equally among Elsie and the settlor's two children.

Thus, the trust guarantees Elsie $35,000 of income annually, first from the marital trust income, then as a first charge upon the residuary trust income, and finally from the corpus of the marital trust. Since the settlor's death in February 1974, the plaintiff has interpreted these trust provisions to mean that if income from the marital trust did not equal Elsie's $35,000 annual income entitlement, she was to receive payment from residuary trust income to equal that sum. It excluded any extra-trust income received by Elsie in determining whether to supplement her marital trust income with income from the residuary trust. Until the settlor's death in February 1974, the plaintiff administered the trusts jointly with him, pursuant to Article Tenth. After his death, the plaintiff administered the trusts with William Minot, the drafter of the trust instrument, until his resignation in December 1976. Since then, the plaintiff has been sole trustee.

As required by the terms of the trust, the plaintiff sent Phyllis French and Gardner Brown quarterly financial statements through 1979 showing the distribution of income and principal of the residuary trust. Although contested on appeal, the superior court found that the two children either approved or failed to make timely objections to these financial statements.

In 1980, in response to questions raised by certain beneficiaries as to the method of distribution of residuary trust income, the plaintiff filed a petition in superior court for instructions as to how the income from the residuary trust should be distributed. The plaintiff asked the court to find that its interpretation of the trust was correct. Phyllis French, the real defendant in this case, filed an answer, alleging that Article Third requires all income received by Elsie, from the marital trust and from any outside sources, to be computed in determining whether any residuary trust income would be distributed to Elsie to ensure that she receives $35,000 income per year.

After a hearing, the superior court granted all the plaintiff's requested findings of fact and rulings of law, including the following rulings of law:

"That trustee Indian Head National Bank of Nashua has, since the death of Raymond Dexter Brown, adminis-

tered the August 14, 1969 trust consistent with Raymond Dexter Brown's intention that his wife's annuity of $35,000 shall be paid first from the income of the marital trust, second from the income of the residuary trust, if necessary, and, third, from the principal of the marital trust, if necessary;

That trustee Indian Head National Bank of Nashua has, since the death of Raymond Dexter Brown, administered the August 14, 1969 trust consistent with Raymond Dexter Brown's intention that distributions from the residuary trust be made to the settlor's wife irrespective of said wife's income outside of the trust . . . ."

The defendant then appealed to this court.

We note at the outset that our purpose is to effectuate the settlor's intention in creating the trust. "[I]t is well established in this jurisdiction that our courts have shown a signal regard for the intention of a settlor of a trust . . . ." *Indian Head Nat. Bank v. Rawls*, 105 N.H. 142, 144, 194 A.2d 767, 769 (1963).

The defendant maintains that the trial court erroneously admitted extrinsic parol evidence of what the settlor's intention was. She argues that the settlor's intent that income earned outside the marital trust was to be included, in determining whether any residuary trust income is payable to her, is plain and unambiguous on the face of the trust. The defendant cites the language of Article Third which requires income paid to Elsie "from all sources" to be included in the calculation.

It has long been the law in this State that extrinsic evidence is inadmissible to vary or contradict the express terms of a will or trust, but that "[e]xtrinsic evidence may be received . . . to ascertain the testator's [or settlor's] intent where the language used is ambiguous." *In re Estate of Sayewich*, 120 N.H. 237, 242, 413 A.2d 581, 584 (1980) (citing *Jones v. Bennett*, 78 N.H. 224, 230–31, 99 A. 18, 22 (1916)); *see* 2 A. SCOTT, THE LAW OF TRUSTS § 164.1, at 1258 (3d ed. 1967). To ascertain whether an ambiguity exists in the trust instrument, we examine the entire document as a whole and do not focus on an isolated phrase or clause. *Indian Head Nat. Bank v. Rawls*, 105 N.H. at 145, 194 A.2d at 769.

The trust instrument in the case before us, when read as a whole, is ambiguous. It is not clear from the trust provisions themselves how Elsie's entitlement to residuary trust income is to be determined. While Article Third states that "income payments . . . from all sources" are to be the basis for that determination, Article

Second provides that marital trust *principal is payable to* Elsie in order to "make payments of money under this Trust Agreement" total $35,000 annually. In light of these apparently contradictory terms, the superior court properly admitted parol evidence of the settlor's intention as to the distribution of residuary trust income to Elsie. Contrary to the defendant's assertion, the trial court was not required to make an express finding of ambiguity in this case. That the trial court found the trust terms to be ambiguous is implicit in its overruling of the defendant's repeated objections to the admission of extrinsic evidence at the hearing.

■ The defendant on appeal does not challenge the competency of the evidence admitted by the trial court to show the settlor's intent regarding the distribution of residuary trust income, nor could she, since her only objections at trial were based upon the parol evidence rule. The extrinsic evidence offered by the plaintiff in support of its position included the testimony of a trust officer of the plaintiff bank that the settlor had told him the trust was intended primarily for the benefit of his wife Elsie. This evidence was not improper because we have indicated that "[t]he relationship of the settlor to the beneficiaries and his duties toward them are among the facts to be considered by a court trying to place itself in the shoes of the creator of the trust in order to ascertain what he intended by the trust instrument." *Id.*, 194 A.2d at 769.

■ This same witness also testified that William Minot, the drafter of the trust instrument and co-trustee after the settlor's death, had said that he believed the phrase "from all sources" referred to "all the *trust's* sources." (Emphasis added.) There was testimony that Mr. Minot, in addition to drafting the trust, had been close friends with the settlor for a number of years. Consequently, the testimony regarding Mr. Minot's interpretation of the trust terms was relevant as to the settlor's intention in creating the trust.

■ We hold that the trial court properly admitted extrinsic evidence to explain the ambiguity concerning the payment of residuary trust income to Elsie and that there was sufficient evidence for the trial court to find that the settlor intended for distributions to be made to her without regard to her sources of income outside the trust.

Because we uphold the superior court's decision that the plaintiff has properly interpreted the trust instrument, we need not address the issue whether the defendant is estopped to challenge the plaintiff's administration of the trust for the years preceding the initiation of this action.

Finally, we also reject the defendant's contention that the plaintiff breached its fiduciary duty by suggesting an interpretation which favored Elsie, to the disadvantage of the defendant and other trust beneficiaries. We have stated on more than one occasion that it is proper for a fiduciary to offer an interpretation of an ambiguous document. The danger that a fiduciary who initiates an action to seek the court's interpretation of a legal document may advocate a position favorable to one beneficiary and unfavorable to another without regard to the merits of the question "is a minimal risk that this court is willing to assume." *In re Peterson Estate*, 104 N.H. 508, 510, 190 A.2d 418, 419 (1963); *see In re Allaire Estate*, 103 N.H. 318, 320, 171 A.2d 191, 192 (1961).

*Affirmed.*

KING, C.J., did not sit; the others concurred.